NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES S. GOYDOS *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RUTGERS, THE STATE UNIVERSITY *et al.*, <br><br> Defendants. | Civ. No. 19-8966 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Stay filed by Plaintiffs James S. Goydos and Maria E. Martins (collectively, "Plaintiffs"). (ECF No. 16.) Defendants Rutgers, the State University ("Rutgers"); Rutgers Cancer Institute of New Jersey ("RCINJ"); Steven K. Libutti; and Brian L. Strom (collectively, "Rutgers Defendants") oppose. (ECF No. 25.) Defendants Saiber LLC, William F. Maderer, and Danalynn T. Colao (collectively, "Saiber Defendants) also oppose. (ECF No. 26.) Defendant RWJ Barnabas Health, Inc. ("RWJ Barnabas") also opposes. (ECF No. 27.) The Court has decided the Motion on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the Motion is granted.

## BACKGROUND

According to the Complaint, Plaintiff Goydos is the victim of a Kafakesque conspiracy by his former employer, former supervisor, and law enforcement officials. Plaintiff Goydos was

1

a surgeon, professor, and researcher employed by Defendants Rutgers and RCINJ. (Compl. ¶¶ 29, 32, ECF No. 1.) Starting in 2014, he raised concerns multiple times about inaccuracies in grant applications to his supervisors, other leaders, and an investigator at Defendants RCINJ and Rutgers. (*Id.* ¶¶ 84–85, 94–101, 103, 105–06, 108–10, 112–16, 122.) "As retribution for being too vocal, [Plaintiff] Goydos was labeled by [Defendants Rutgers and RCINJ] and certain administrators as a troublemaker [and] as someone who knew more than he should, and false rumors began to circulate that [Plaintiff] Goydos had been criticizing RCINJ, the very institution that he helped found almost 25 years earlier." (*Id.* ¶ 123.)

Defendants Rutgers and RCINJ investigated Plaintiff Goydos after he was observed going into the director's suite to get a cup of coffee while working late one evening; the allegation was unsubstantiated. (*Id.* ¶¶ 124, 125.) A memorandum was allegedly placed into his employment file stating falsely that he had disparaged Defendant RCINJ. (*Id.* ¶ 126; *see also id.* ¶¶ 104, 111 (outlining instances of Plaintiff Goydos' supervisors describing him as accusing Defendant RCINJ of fraud and being a "negative force").) Plaintiff Goydos' bonus was reduced without explanation. (*Id.* ¶¶ 127–28.)

Defendant Libutti—who became Plaintiff Goydos' supervisor in 2017—then "bankroll[ed] and partner[ed] in an investigation intended to clear his own name, while implicating someone else." (*Id.* ¶¶ 34, 108.) The investigation was led by the law firm Defendant Saiber LLC and its lawyers, Defendants Maderer and Colao. (*Id.* ¶ 35.) Saiber Defendants "assumed a quasi-prosecutorial role," acted like law enforcement, and retained retired FBI agents. (*Id.* ¶¶ 36–37.) Defendants Libutti, Rutgers, RCINJ, and RWJ Barnabas also participated in the joint investigatory effort. (*Id.* ¶ 42.) The investigation searched and seized "computers, records, cell phones, and other evidence from both public and private sources," and proceeded in

2

contravention of due process, other legal safeguards, and internal policies. (*Id.* ¶¶ 38–40.) The investigation then turned over to prosecutors and police "otherwise innocuous information of a purely circumstantial nature," as well as "cherry-picked information . . . much of which was . . . either false, misleading, or out of context" in order to direct law enforcement scrutiny towards Plaintiff Goydos. (*Id.* ¶¶ 43–44.)

On the morning of March 30, 2018, investigators from the Middlesex County Prosecutor's Office and other law enforcement agencies executed a search warrant on the home of Plaintiff Goydos and his wife Plaintiff Martins. (*Id.* ¶ 45.) The search took an entire day, and investigators "rummage[d] through every inch of the house and its contents." (*Id.* ¶ 46.) They found a sealed bag containing a rifle that was not in plain view. (*Id.* ¶ 47.) Plaintiff Goydos was arrested, booked, and processed on a gun possession charge. (*Id.* ¶ 49.)

While he was being processed, Defendant Rutgers police arrived with a letter stating that Plaintiff Goydos had been placed on administrative leave; that he could have no contact with Rutgers students, patients, faculty, or staff; and that he was banned from all Rutgers properties. (*Id.* ¶¶ 51–53.) The letter did not explain the charges against Plaintiff Goydos or the allegations against him. (*Id.* ¶¶ 54–55.) Plaintiff Goydos was never offered a hearing and later was provided only with the explanation that "[Plaintiff] Goydos has appeared in court for the illegal possession of a firearm and . . . the Middlesex County Prosecutor's Office is continuing its investigation of other potential crimes that may have occurred at [R]CINJ in the fall of 2017." (*Id.* ¶¶ 57–59.)

"On December 7, 2018, almost 9 months after being placed on administrative leave, with no charges being asserted against him, no criminal conviction, and with no hearing afforded by [Defendants Rutgers and RCINJ], counsel for Rutgers advised counsel for [Plaintiff] Goydos that it would be pursuing detenuring proceedings against him in the coming days." (*Id.* ¶ 65.) No

basis for detenuring was provided. (*Id.* ¶ 66.) "To avoid further persecution" by an unfair process, Plaintiff Goydos "was compelled to tender his resignation" on December 14, 2018. (*Id.* ¶ 67.)

On December 28, 2018, based in part on evidence procured by Defendants, a Middlesex County Grand Jury indicted Plaintiff Goydos for violations stemming from the placement of a camera in a women's bathroom at Defendant RCINJ. (*Id.* ¶ 68; *see also* Indictment No. 18-12-1698-I (N.J. Super. Ct., Law Div., Crim. Part Middlesex Cnty.).)[1] Plaintiff Goydos is alleged to have "fished through the ceiling a complex network of wires connecting a camera in the bathroom to a termination point somewhere in [Defendant] Libutti's office" in order to frame Defendant Libutti. (Compl. ¶¶ 69–71.) Plaintiff Goydos, as required, self-reported the criminal charges to the state medical licensing board; as a result, he faces potential license suspension or revocation or other disciplinary action. (*Id.* ¶ 77.) His career and reputation have been severely damaged. (*Id.* ¶ 75.) Plaintiff Goydos maintains that he is innocent. (*Id.* ¶ 68.) No trial date has been scheduled. (Saiber Defs.' Opp'n at 1.)

Plaintiffs filed the Complaint in this case on March 27, 2019, alleging ten counts: (1) violation of Plaintiff Goydos' Fourth, Fifth, Sixth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Compl. ¶¶ 137–48); (2) violation of the Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 *et seq.* (Compl. ¶¶ 149–58); (3) defamation (*id.* ¶¶ 159–63); (4) false light invasion of privacy (*id.* ¶¶ 164–69); (5) tortious interference with business relations (*id.* ¶¶ 170–

---

[1] Specifically, Plaintiff Goydos was charged with 116 counts of invasion of privacy, 13 counts of computer theft, 8 counts of official misconduct, 7 counts of burglary, 5 counts of impersonation, 4 counts of Wiretap Act violations, 2 counts of possession of a prohibited device, and 1 count each of possession of an assault weapon, criminal coercion, falsely implicating another, hindering apprehension, and a pattern of official misconduct. (Saiber Defs.' Opp'n at 1.)

75); (6) intentional infliction of emotional distress (*id.* ¶¶ 176–79); (7) negligence (*id.* ¶¶ 180–83); (8) conversion (*id.* ¶¶ 184–88); (9) breach of contract (*id.* ¶¶ 189–94); and (10) per quod for loss of consortium by Plaintiff Martins (*id.* ¶¶ 195–97).[2]

Several Defendants had planned to file Motions to Dismiss on May 31, 2019. (*See* Stipulation & Order, ECF No. 10; Bennett Letter, ECF No. 13.) The day before—May 30, 2019—Plaintiffs filed the present Motion seeking a stay or, in the alternative, a protective order to prevent discovery that would require a waiver of Plaintiff Goydos' Fifth Amendment rights. (ECF No. 16.) In response, the Court extended Defendants' deadline to respond to the Complaint until seven days after the Motion to Stay was decided. (Letter Order, ECF No. 18.) Nevertheless, Defendants filed Motions to Dismiss on May 31 and June 4, 2019. (ECF Nos. 19, 20, 23.)

Defendants opposed the Motion to Stay on June 17, 2019. (Rutgers Defs.' Opp'n, ECF No. 25; Saiber Defs.' Opp'n, ECF No. 26; Def. RWJ Barnabas Opp'n, ECF No. 27.) Plaintiff replied on June 21, 2019. (ECF No. 29.) This Motion is presently before the Court.

## **DISCUSSION**

I. **The Motion to Stay is Granted**

   A. *Legal Standard*

A stay is an "extraordinary remedy," *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998) (citing *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987)), but "[a] court has discretion to stay a case if the interests of justice require it," *id.* (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). The inquiry "calls for the exercise of judgment,

---

[2] The Conscientious Employee Protection Act claim is brought against Rutgers Defendants. (*Id.* ¶¶ 149–58.) The conversion and breach of contract claims are brought against Defendants Rutgers and RCINJ. (*Id.* ¶¶ 184–94.) All other Counts are brought against all Defendants. (*Id.* ¶¶ 137–48, 159–83, 195–97.)

which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (internal citations omitted).

In determining whether to stay a civil case pending criminal proceedings, the court usually considers:

> 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.

*Walsh*, 7 F. Supp. 2d at 526–27. These factors make sense in the typical case where a plaintiff sues a defendant at the same time that the defendant faces criminal charges for similar conduct. *See, e.g.*, *Walsh*, 7 F. Supp. 2d 523, 526; *Walker v. Cnty. of Gloucester*, 2016 WL 1725942, at *1 (D.N.J. Apr. 28, 2016); *De'Omilia Plastic Surgery, PC v. Sweeton*, 2013 WL 6070037, at *1 (D.N.J. Nov. 18, 2013). *But see Strategic Envtl. Partners, LLC v. N.J. Dep't of Envtl. Prot.*, 2016 WL 3267285, at *3 (June 8, 2016) ("Unlike many cases in which a stay is granted pursuant to the *Walsh* factors, the civil and criminal proceedings here do not arise from the same occurrence."). Here, by contrast, the civil Plaintiff Goydos is the criminal defendant. The six-factor *Walsh* test is thus an imperfect fit for this case. For instance, *Walsh* would have the Court consider "prejudice to plaintiff caused by a delay" even though it is Plaintiff who seeks a stay.

Nevertheless, these six factors may be slightly modified to fit the circumstances of this case. The Court will examine: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the criminal case, including whether an indictment has been issued; (3) the private interests of and burden on the non-movant Defendants; (4) the private interests of and burden on the movant Plaintiffs; (5) the interests of the court; and (6) the public interest.

B.      *Overlap of Issues in the Criminal and Civil Cases*

There are some areas of overlap between the criminal and civil cases. The criminal case will examine whether Plaintiff Goydos placed a camera in the women's restroom. That issue will also be important here because it will determine whether Defendants can raise truth as a defense in his defamation and false light invasion of privacy claims. It may also shed light on Plaintiff Goydos' constitutional claims because the evidence against Plaintiff Goydos will influence whether Defendants' search of his office computer was reasonable. Additionally, this civil case contains allegations that Defendants carried out unconstitutional searches and interrogated Plaintiff Goydos without advising him of his rights. (Compl. ¶ 147(a), (d), (e).) These same matters will probably be raised in suppression motions in the criminal proceedings.

That being said, the criminal case is fundamentally about what Plaintiff Goydos did, while the civil case is fundamentally about what Defendants did. Naturally, there is some difference between the issues covered in the two cases, and some matters in this case are divorced entirely from the criminal proceedings. For instance, Plaintiff Goydos claims that he was terminated without a hearing (*id.* ¶ 147(i)) and in violation of his contract (*id.* ¶¶ 191–92), that his bonus was reduced because he disclosed fraudulent activity (*id.* ¶ 153), and that Defendants Rutgers and RCINJ refused to return his personal belongings (*id.* ¶¶ 185–87). Although there is some overlap between the civil and criminal matters, there are also some areas of the civil case that are unrelated to the criminal case. This factor slightly counsels a stay.

C.      *Status of the Criminal Case*

The status of the criminal case is important to the inquiry because, post-indictment and pre-trial, the risk of self-incrimination is heightened and the concern of lengthy resolution is reduced. *See Walsh*, 7 F. Supp. 2d at 527 (internal citation omitted). An indictment was issued in

7

December 2018, so the Court is not concerned about an endless period of investigation. However, trial has not yet been scheduled, so it could still be some time before the criminal case is resolved. This factor favors a stay to some extent.

### D. *Interests of and Burden on the Non-Movant Defendants*

Defendants vehemently assert that Plaintiffs' allegations are baseless and express a strong desire to proceed expeditiously. (*See, e.g.*, Rutgers Defs.' Opp'n at 1, 6.) This interest is heightened because Defendants claim that "Plaintiffs' Complaint was designed to be sensational and win headlines,"[3] and Defendants seek vindication in the court of public opinion. (Def. RWJ Barnabas' Opp'n at 10; Rutgers Defs.' Opp'n at 6.) This seems especially important because Defendant Rutgers is a publicly-funded university with a public image to maintain.

Defendants also raise the general concern that delay could cause evidence to be lost, diminishing Defendants' ability to mount an effective defense. (*Id.*; Def. RWJ Barnabas' Opp'n at 11.) But this hardship, though not meaningless, *see De'Omilia*, 2013 WL 6070037, at *4, exists in all litigation, and Defendants do not show any enhanced hardship in this case, *see Walsh*, 7 F. Supp. 2d at 528 ("Walsh has asserted no injury that is particularly unique."). Ultimately, Defendants' interests are similar to the interests of any defendants in any case—swift resolution that will clear their name. While this interest counsels somewhat against a stay, it is not a strong factor.

### E. *Interests of and Burden on the Movant Plaintiffs*

Should this case continue at the same time that criminal charges are pending, Defendants

---

[3] The Complaint did, in fact, garner news articles in the *New Jersey Law Journal*, *NJ.com*, *The Daily Targum* (Defendant Rutgers' student newspaper), and *East Brunswick, NJ Patch*. (*See* Def. RWJ Barnabas' Opp'n Exs. A–D, ECF Nos. 27-1 to -4.)

will seek to depose Plaintiff Goydos, and he will face a dilemma: either assert his Fifth Amendment privilege against self-incrimination to the detriment of his civil case, or waive the privilege to the detriment of his criminal case. "Although the Supreme Court has held that it is not unconstitutional to force a defendant into this choice, a court may nevertheless exercise its discretion to stay the civil case in the interests of justice." *Walsh*, 7 F. Supp. 2d at 528 (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318–19 (1976); *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985)). Plaintiffs also raise the issue that "discovery here will provide otherwise non-discoverable information for use by the prosecution in the criminal case[, g]iven the close cooperation and interaction between the Defendants and the prosecution to date . . . ." (Reply at 8–9.) These concerns are substantial and suggest that a stay is appropriate.

      Defendants make much of the fact that Plaintiff Goydos chose to bring this case in the first place. (*See, e.g.*, Rutgers Defs.' Opp'n at 6 ("If [Plaintiff] Goydos did not want to answer questions in a civil action . . . his option was not to file this civil action.").) Other district courts have taken the position that a civil plaintiff's Fifth Amendment privilege should be ignored to prevent use of the privilege "as a sword and as a shield." *Waldbaum v. Worldvision Enters., Inc.*, 84 F.R.D. 95, 97 (S.D.N.Y. 1979); *see also Indep. Prods. Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 277 (S.D.N.Y. 1958). Of course, from Plaintiff Goydos' perspective, he has suffered a grave wrong, and filing a lawsuit was the only way to seek legal redress for that wrong. The Court is uncomfortable, therefore, with the suggestion that Plaintiff Goydos' interests are entitled to less weight because he is a plaintiff. Moreover, if a stay were granted, Plaintiff Goydos would not be able to avow himself of the Fifth Amendment, and the case would be decided with all the facts in due course.

F.  *Interests of the Court and the Public*

The Court and the public have an interest in the prompt resolution of disputes, and a stay would hinder this interest. The Court also has an interest in avoiding multiple adjudications of the same questions: If this case proceeds, the Court may rule on certain questions and then be forced to reconsider its rulings based on what occurs in the criminal case. Plaintiff Goydos would also assert his Fifth Amendment privilege during discovery, and the Court might be called on to decide those disputes,[4] so concerns of judicial efficiency point towards a stay in this regard.

Finally, to the extent that this case has been publicized, *see supra* note 3, the public has an interest in knowing whether Plaintiffs' allegations are true. The various interests of the Court and the public do not strongly favor or disfavor a stay.

G.  *Concluding Analysis*

The overlap of issues between the two cases and Plaintiff's interests outweigh the unexceptional harm to Defendants that would result from a stay. First, there is some overlap between the matters to be adjudicated here and the matters to be adjudicated in the criminal case, slightly pointing in favor of a stay. Second, Plaintiff Goydos has been indicted, though no trial date has been set, and this consideration points somewhat in favor of a stay. Third, Defendants would be harmed from a stay, though not in a way that is significantly different from any other defendant in any other case; by contrast, Plaintiff would be seriously harmed by denial of a stay, given his Fifth Amendment dilemma and possible cooperation between Defendants and the criminal prosecution. And the interests of the Court and the public do not point strongly in either

---

[4] In this very Motion, Plaintiffs seek a protective order as an alternative to a stay. (Mot. at 7–8.) If the Court were to deny a stay, Plaintiffs would likely reassert these same arguments during discovery.

direction. Given all this, a stay is appropriate.

## II. The Court Will Not Decide the Motions to Dismiss at This Time

The Court must also determine whether it will decide the pending Motions to Dismiss. A district court has substantial discretion in managing its docket, including deciding the order in which to decide pending motions. *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892–93 (2016) (noting district courts' inherent authority in this area and collecting cases).

Defendants urge the Court to decide the Motions to Dismiss because they seek "an opportunity to publicly refute what have been very public allegations," and "[i]f Plaintiffs' motion for a stay is decided first and granted, [the Complaint's] allegations against . . . Defendants will remain unanswered and unanswerable until resolution of Plaintiff Goydos' criminal prosecution, which could be years away." (RWJ Barnabas Opp'n at 4.) But this concern is illusory for two reasons. First, Defendants have already filed Motions to Dismiss, so they have had the opportunity to "publicly refute" the allegations. Second, a court does not decide the truth of a complaint on a motion to dismiss; it decides only the sufficiency of the complaint based on the assumption that all facts therein are true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A ruling on the Motions to Dismiss therefore will not help Defendants to disprove Plaintiffs' allegations.

After disposing of that concern, the Court will decide whether to rule on the Motions to Dismiss based on concerns of judicial efficiency. If Plaintiff Goydos is acquitted, he will likely wish to amend the Complaint to add that fact and bolster his accusations that he was framed. Also, other details of the investigation may emerge during the criminal trial, and Plaintiffs may wish to add those details as well. Even if Plaintiff Goydos does not seek to amend the complaint after the stay is lifted, Defendants may have new grounds for dismissal after the criminal trial is

11

over: If Plaintiff Goydos is convicted, Defendants will probably seek dismissal of the Complaint based on this fact. Thus, there is a strong likelihood that the criminal trial will beget a new round of motions to dismiss. There is little point, then, in deciding the pending Motions to Dismiss now.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Stay is granted. An appropriate Order will follow.

Date:   6/24/19                                                                     */s/ Anne E. Thompson*
                                                                                     ANNE E. THOMPSON, U.S.D.J.