**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES S. GOYDOS and MARIA E. MARTINS,<br><br>                    Plaintiffs,<br>          v.<br><br>RUTGERS, THE STATE UNIVERSITY, et al.,<br><br>                    Defendants. | Civ. A. No. 3:19-cv-8966<br><br>**OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Defendants Rutgers, the State University ("Rutgers"), Rutgers Cancer Institute of New Jersey ("RCINJ"), Dr. Steve K. Libutti ("Dr. Libutti"), Dr. Brian L. Strom ("Dr. Strom"), Timothy J. Fournier ("Fournier") and Eugene Simon's ("Simon") (collectively, "Defendants") Motion to Dismiss Plaintiffs James S. Goydos' and Maria E. Martins' (together, "Plaintiffs") Third Amended Complaint (the "TAC") (*see* TAC, ECF No. 82), for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) with prejudice (the "Motion"). (*See* Defs.' Mot., ECF No. 87.) Plaintiffs opposed (*see* Pls.' Opp'n, ECF No. 91), and Defendants replied (*see* Defs.' Reply, ECF No. 92). The Court has reviewed the parties' submissions, and now decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.

## I.    BACKGROUND

For the sake of expediency, and cognizant that it writes for the benefit of parties familiar with this matter, the Court omits recollection of the factual background and procedural history, as

well as a detailed restatement of the parties' arguments, from the instant decision. Indeed, this Opinion adopts and incorporates the factual background set forth by the prior disposition of the similarly situated motion to dismiss the Second Amended Complaint ("SAC"), and only provides additional background for events that transpired after the disposition of the previous motion to dismiss. (*See* Mem. Op. 1-7, ECF No. 76.)

The Court issued an Opinion (*See* Mem. Op.), and an Order (*See* Order, ECF No. 77), adjudicating Defendants' Motion to Dismiss the SAC. In that decision, the Court granted Defendants' Motion to Dismiss as to Counts One and Four through Ten of Plaintiffs' SAC and dismissed those counts without prejudice. (*See* Order, 1.) The Court also dismissed the individual defendants Dr. Libutti, Dr. Strom, Fournier, and Simon from Count Two in their individual capacities. (*Id.* at 2.) The Court denied Defendants' Motion to Dismiss Counts Two and Three, and ultimately provided Plaintiffs with leave to amend the SAC. (*Id.*)

Plaintiffs filed the TAC on November 29, 2021. (ECF No. 82.) Defendants moved to dismiss the TAC on January 26, 2022; and the parties engaged in the appropriate motion practice. (ECF Nos. 87-92.)

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state such a *prima facie* plausible claim in accord with the Federal Rules, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief,'" Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)

*abrogated by Twombly*, 550 U.S. 544).  The reviewing district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UMPC Shadyside.*, 578 F.3d 2013, 210-11 (3d. Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Following the Supreme Court's refinement of the parameters of a plausible pleading, the Third Circuit devised a three-step process to facilitate evaluation of a complaint's sufficiency.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  This divides the district court's analysis into three discrete segments: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Id.*

Typically, it is inappropriate for a reviewing court to consider extraneous documents—that is, documents not attached to the complaint, nor expressly incorporated therein—unless the court converts the motion to dismiss into a motion for summary judgment.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing Rule 12(b)(6)).  This tenet runs parallel to another, requiring the court to analyze the complaint "in its entirety," including "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed.

2004 & Supp. 2007)).  Additionally, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consul. Indus.*, 998 F.2d 1192, 1196 (1993) (collecting cases).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.* (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984), *cert. denied*, 469 U.S. 831).  Finally, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir 1991)).

## III.  <u>DISCUSSION</u>

In the most recent iteration of the amended pleading, Plaintiffs attempt to cure the deficiencies identified by the Court in its most recent disposition.  The Court will address each count in turn.

### a.  *Federal Constitutional Law Claims*

Plaintiffs allege constitutional violations of Dr. Goydos' First, Fourth, Fifth, and Fourteenth Amendment rights, and also allege that all Defendants engaged in a conspiracy to commit civil rights violations.  (*See generally* TAC ¶¶ 246-385.)

The Court has already laid out the legal standard for allegations of constitutional violations pursuant to Section 1983.  (*See* Mem. Op. 8-9.)  This Court will rely on the standard as identified in this Court's previous Opinion.

#### i.   <u>Count One: First Amendment</u>

This Court dismissed Plaintiffs' First Amendment claim in its previous Opinion because it determined that the SAC did not adequately plead that Dr. Goydos' speech addressed a matter of

"public concern protected by the First Amendment." (Mem. Op. 10.) The Court explained that Dr. Goydos had "raised specific concerns regarding discrepancies in his own salary allocation efforts, not fraud or misappropriation at RCINJ generally," and raised those issues "only to his superiors." (*Id.* at 10-11.) The Court further held that "while Dr. Goydos's official duties may not have included reviewing the accuracy of grant figures, Dr. Goydos was responsible for regularly submitting accurate grant applications and even discovered this discrepancy while doing so," causing the Court to conclude that Dr. Goydos was not "simply acting as a citizen, and not a public employee, in this instance." (*Id.* at 11-12.)

The standard for a First Amendment claim was laid out in this Court's previous Opinion, and the Court relies on it now:

> In order to establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)). Generally, a public employee's speech is protected by the First Amendment when "(l) in making it, the employee spoke as a citizen[;] (2) the statement involved a matter of public concern[;] and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Falco v. Zimmer*, 767 F. App'x 288, 300 (3d Cir. 2019) (alteration in original) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)). The Supreme Court held in *Garcetti* that a public employee does not speak "as [a] citizen" when he makes a statement "pursuant to [his] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

(Mem. Op. 9-10.)

Defendants allege that Plaintiffs' attempts to cure the First Amendment claims in the TAC have failed. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss, ("Def's Moving Br."), ECF 87-1, 9-10.) Defendants assert that Plaintiffs have still failed to demonstrate that Dr. Goydos' alleged speech addressed a matter of public concern protected by the First Amendment, and instead the TAC only again describes Dr. Goydos' conversations with his supervisor regarding his salary allocation. (*Id.*) The Court agrees.

It is clear that Plaintiffs have tried to cure the deficiencies this Court described in its previous Opinion, especially the Court's conclusion that Dr. Goydos was acting within the scope of his official duties. (*See* TAC ¶¶ 256-257 ("Dr. Goydos' position in no way involved auditing, maintaining, or overseeing the Rutgers Defendants' financial records, payroll records, or accounting department.  In reporting what he reasonably believed to be misappropriation and fraud, Dr. Goydos spoke as a private citizen upon matters outside the scope of his employment with the Rutgers Defendants.").)  The Court is unpersuaded by these attempts.

The Court's previous Opinion found that Plaintiffs failed to state a valid First Amendment claim because he raised concerns related to his own salary allocation to his direct supervisor, despite his official duties not including the review of the accuracy of grant figures. (Mem. Op. 10-11.) Plaintiffs' TAC does not assert that he identified an issue of concern aside from his own grant and associated salary concerns (*see* TAC ¶¶ 193-206, 251-252), and does not assert that he raised this issue to anyone other than his supervisors (*see id.* ¶¶ 207-219, 252-253, 262).  While it is clear that Plaintiffs' TAC attempts to couch his reporting of the alleged grant deficiencies as the actions of a concerned citizen reporting a matter of significant public concern, it is evident in the TAC, as it was in the SAC, that "while Dr. Goydos's official duties may not have included reviewing the accuracy of grant figures, Dr. Goydos was responsible for regularly submitting accurate grant

applications," (Mem. Op. 11) and it is not plausible that Dr. Goydos was simply acting as a citizen and not a public employee when he spoke to his supervisors about errors in the grant application.

Ultimately, the Court again finds that the TAC does not plausibly allege that Dr. Goydos was acting as a citizen, and not a public employee. Following, his speech is not protected, and Plaintiffs' First Amendment claim must again fail and will be dismissed with prejudice.

ii.     <u>Count Two: Fourth Amendment</u>

The Court now turns to the allegations that Defendants violated Dr. Goydos' constitutional rights under the Fourth Amendment. This Court's previous Opinion held that Plaintiffs' SAC and the allegations surrounding the October 2, 2017 imaging of Dr. Goydos' computer were sufficient to raise a claim under the Fourth Amendment, but the allegations surrounding the November 6, 2017 forensic image were not. (Mem. Op. 13-15.) The TAC removes no allegations from Plaintiffs' Fourth Amendment claims, and only adds detail and color to the allegations contained therein. (*See* TAC ¶¶ 295, 298-299, 319-322.) Thus, this Court finds no cause in the TAC to disturb the conclusion that the "November 6, 2017 forensic image of Dr. Goydos' office computer and the seizure of his University-issued cell phone were part of an investigation into workplace misconduct and that this search was reasonable." (Mem. Op. 13.) Further, the Court concludes that the TAC still supports the conclusion that "the allegations regarding the October 2, 2017 imaging of Dr. Goydos's work computer are sufficient to raise a Fourth Amendment claim," because "it is not so clear that on October 2, 2017, there were reasonable grounds for suspecting the search [of Dr. Goydos' computer] would uncover misconduct by Dr. Goydos and that he had a reasonable expectation of privacy at that time." (*Id.* 15.) Thus, the Court concludes that Plaintiffs have sufficiently pled a Fourth Amendment claim for the reasons stated in the Court's previous Opinion. (*See* Mem. Op. 12-16.)

7

However, Plaintiffs' TAC again brings claims against the individual defendants for violations of the Fourth Amendment. This Court's previous Opinion dismissed Dr. Libutti from this claim pursuant to the doctrine of qualified immunity, specifically because Plaintiffs' SAC failed to allege that a constitutional right was clearly established. (*Id.* 15-16.)

"Qualified immunity shields officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lentz v. Taylor*, No. 17-4515, 2019 U.S. Dist. LEXIS 37542, at *21 (D.N.J. Mar. 8, 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Walker v. Coffey*, 905 F.3d 138, 143 (3d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016).

As the Court has already determined that Plaintiffs have sufficiently pled their Fourth Amendment claim so as to survive a motion to dismiss, the Court now turns to the question of whether the right was "clearly established." In analyzing whether a right is clearly established, "the Supreme Court has determined that such a finding hinges on 'whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted.'" *Lentz v. Taylor*, No. 17-4515, 2019 U.S. Dist. LEXIS 37542, at *22 (D.N.J. Mar. 8, 2019) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

> [A] [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official' would have understood that what he is doing violates that right.'" Although

> the Supreme Court "do[es] not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." A plaintiff must identify either "controlling authority in the[] jurisdiction" or a "consensus of cases of persuasive authority."

*Walker* 905 F.3d at 144 (internal citations omitted).

Here, the Court again finds it appropriate to dismiss the individual defendants, Dr. Libutti, Fournier, and Simon pursuant to the doctrine of qualified immunity. The Third Circuit has dealt with a similar matter, analyzing whether qualified immunity protected a deputy attorney general and a special agent working with the Pennsylvania Office of the Attorney General from prosecution when they relied on an unenforceable subpoena to direct the Assistant General Counsel at Pennsylvania State University ("Penn State") to search for requested emails and turn them over. *See Walker* 905 F.3d at 144. The Court began its analysis by "consider[ing], at a minimum, whether it is clearly established that the Fourth Amendment affords an employee, such as [the plaintiff], the right to have the contents of her work emails remain free from a law enforcement search, absent a warrant or valid exception to the warrant requirement." *Id.* at 144. The Third Circuit concluded that "such a right is not clearly established." *Id.*

The Court here also finds that Plaintiffs' TAC or moving papers do not identify a constitutional right that was clearly established. Plaintiffs must do more than simply allege that "Dr. Goydos' Fourth Amend[ment] rights against warrantless searches and seizures is a clearly established constitutional right." (TAC ¶ 319.) Plaintiffs must demonstrate that the Fourth Amendment clearly establishes a right to have the contents of Dr. Goydos' work computer remain free from inspection or copying by his employer, which the TAC fails to do. Because Plaintiffs' TAC cannot establish that a constitutional right was clearly established, the Court will dismiss

individual defendants Dr. Libutti, Fournier, and Simon pursuant to the doctrine of qualified immunity.

### iii.    Count Three: Fifth Amendment

The Court now turns to Plaintiffs' assertions that Defendants Rutgers and RCINJ violated the Fifth Amendment by demanding that Dr. Goydos' appear for a "deposition like interview, with court reporter present, without disclosing the subject matter of the inquiry and without disclosing that the information sought was in furtherance of a criminal investigation." (TAC ¶ 333.)  This Court, in its previous Opinion, concluded that Plaintiffs' SAC plausibly alleged a claim under the Fifth Amendment as "Dr. Goydos . . . could not have been compelled to answer questions that required him to waive any privileges or rights under the threat of termination." (Mem. Op. 18.)

Count Three of Plaintiffs' TAC is substantially identical to Count Three of Plaintiffs' SAC, which has already survived this Court's analysis on the previous motion to dismiss, and the Court finds no reason to disturb that sound analysis. (*See* TAC ¶¶ 326-343 (adding only three allegations when compared to SAC).) Thus, for the reasons stated in the Court's previous Opinion, the motion to dismiss is denied as to Plaintiffs' Fifth Amendment claims.

### iv.    Count Four: Fourteenth Amendment

Plaintiffs' final Section 1983 claim is that Dr. Goydos had "a protected property right and interest in his employment and a liberty right and interest in his professional reputation under the Constitution of the United States," and that Defendants deprived him of these rights. (TAC ¶ 349.) Specifically, the TAC asserts that Dr. Goydos was placed on administrative leave without a hearing, and despite the fact that no charges were ever brought against Dr. Goydos, he was informed that detenuring proceedings would begin against him. (TAC ¶¶ 351-354.)  Dr. Goydos

10

asserts that these events forced him to resign from his position on December 14, 2018.  (TAC ¶ 356.)

The Fourteenth Amendment protects against "depriv[ation] of an individual interest [in] . . . property" without the "'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  For a protected property interest to exist, a plaintiff is required to have "a legitimate claim of entitlement to" the interest at issue that stems from "an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  "Thus, it is not sufficient that a plaintiff has an abstract need or desire or a unilateral expectation of a particular benefit."  *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960 (3d Cir. 2019) (internal quotations and citations omitted).  "[T]he property interest must arise from either the 'circumstances of . . . service' or the 'mutually explicit understandings that support [the] claim of entitlement to the benefit.'"  *Id.*  (quoting *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)).

Plaintiffs here assert that "Dr. Goydos had a protected property right and interest in his employment and a liberty right and interest in his professional reputation under the Constitution of the United States."  (TAC ¶ 349.)  The TAC also asserts that Dr. Goydos "was constructively discharged from his tenured employment, of which he had a protected property right and interest under the Constitution of the United States."  (TAC ¶ 364.)

The Court concludes that the TAC does not cure the deficiencies of the SAC as to Dr. Goydos' due process claim as it relates to his employment.  "There is no dispute . . . that 'tenured professors at public universities hold a property interest in their tenure, so that procedural due process is necessary when the university seeks to dismiss a tenured professor.'"  *Vatner v. Bd.*

*of Trs. of the Univ. of Med. & Dentistry of N.J.*, No. 12-3339, 2015 U.S. Dist. LEXIS 13135, at

*26 (D.N.J. Feb. 3, 2015) (quoting *Univ. of Pittsburgh v. United States*, 507 F.3d 165, 176 (3d Cir.

2007)).  However, Dr. Goydos was not dismissed from his position – rather he was placed on a

paid administrative leave, which has different property implications.

The Court finds, as it did in the previous Opinion, that Plaintiffs do not sufficiently allege

a due process violation when Dr. Goydos was suspended *with pay* from March 30, 2018, through

the date of his resignation.  According to the TAC, Dr. Goydos was placed under arrest on March

30, 2018, after law enforcement officials executed a search warrant at his home.  (TAC ¶¶ 49-53.)

Dr. Goydos was placed on administrative leave that same day.  (*Id.* ¶¶ 54-55.)  This Court again

concludes that "while Dr. Goydos had an interest in his continued employment, the property

interest implicated was diminished because he was placed on leave with pay." (Mem. Op. 20-21.)

*See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544 (1985) (suggesting that "in those

situations where the employer perceives a significant hazard in keeping the employee on the job,

it can avoid the [due process] problem by suspending with pay.").  *See also Edwards v. Cal. Univ.*,

156 F.3d 488, 492 (3d Cir. 1998) (holding that placing a tenured professor on paid leave does not

implicate due process concerns); *Jerrytone v. Musto*, 167 F. App'x 295, 301 (3d Cir. 2006) ("Given

the minimal property interest involved, [a public teacher's] due process rights were not violated

when he was placed on paid suspension without a prior hearing after allegations of serious

misconduct and criminal activity in his classroom arose from credible sources.")  The Court thus

finds that Plaintiffs do not state a claim for relief on this basis.

Next, Plaintiffs assert that Dr. Goydos was constructively discharged and thus deprived of

his property interest in his employment in violation of the Fourteenth Amendment.  This Court

cannot agree.  The Court laid out the relevant legal standards in its previous Opinion and in the

interest of judicial economy, the Court will reproduce it below:

> The Third Circuit has deemed that a resignation will be deemed a constructive discharge, and within the protections of the due process clause under two circumstances: "(1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Hill*, 455 F.3d at 233 n.10 (quoting *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999)).  If an employee resigns of his own "free will", however, the Third Circuit has ruled that "even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Leheny*, 183 F.3d at 227 (citations omitted).

> Courts in this circuit have considered the following factors in determining whether there was a constructive discharge pursuant to coercion or duress:

>> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [h]e was given; (3) whether the employee had a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the employee had the advice of counsel.

> *Errington v. City of Reading*, No. 21-118, 2021 U.S. Dist. LEXIS 164401, 2021 WL 3885177, at *5 (E.D. Pa. Aug. 31, 2021) (citing *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125-26 (3d Cir. 2018)).  The objective test for whether Defendant was constructively discharged due to misrepresentation is if "[d]efendants misrepresented a material fact upon which Plaintiff reasonably relied when deciding to retire." *Balik v. City of Bayonne*, No. 10-4145, 2013 WL 12091322, at *4 (D.N.J. Feb. 20, 2013), *aff'd*, 567 F. App'x 86 (3d Cir. 2014).  A court may also find a resignation involuntary "if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." *Benson v. Cooke*, No. 15-858, 2016 U.S. Dist. LEXIS 50765, 2016 WL 1562898, at *3 (D. Del. Apr. 15, 2016) (quoting *Hargray v. City of Hallandale*, 57 F.3d 1560, 1570 (11th Cir. 1995)).

(Mem. Op. 21-22.)

The Court here must also conclude that the TAC does not sufficiently allege that Dr. Goydos was constructively discharged. The TAC raises no plausible allegations that Dr. Goydos was coerced into submitting his resignation and presents no allegations that would support an inference that he resigned pursuant to a misrepresentation made by Defendants. If he was so inclined, Dr. Goydos could certainly have decided to move forward with the detenuring proceedings. He declined to do so, and instead elected to submit his resignation on December 14, 2018. The Court therefore concludes that the allegations in the TAC, even taken in the light most favorable to Plaintiffs, do not support a constructive discharge claim, and thus the property interest claim under the Fourteenth Amendment must fail.

Plaintiffs next assert that Defendants "created and disseminated a false and defamatory impression about Dr. Goydos in connection with his termination, while restraining his ability to lawfully correct same," and this conduct destroyed Dr. Goydos' reputation. (TAC ¶ 366-367.)

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236.

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination," it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus."

*Id.* "To satisfy the 'stigma' prong of the test, the employee must show: 1) publication of 2) a substantially and materially false statement that 3) infringed upon the 'reputation, honor, or integrity' of the employee." *Brown v. Montgomery County*, 470 F. App'x 87, 91 (3d Cir. 2012).

The Court's inquiry into whether Plaintiffs can maintain a due process claim under this theory is a short one.  Plaintiffs' TAC does not allege that the allegedly stigmatizing statements were made publicly, and thus his Fourteenth Amendment claim under this theory must fail.  It is clear the TAC attempts to cure the deficiencies of the SAC as to this claim.  It is also clear that those attempts have failed.  The TAC asserts that Dr. Goydos was banned from Rutgers property and directed to have no contact with "his colleagues, employees, and patients." (TAC ¶ 365.)  It further alleges that "[i]t was in February of 2018 that Dr. Goydos first learned through workplace rumors that the "investigation" described by counsel for the Rutgers Defendants was in fact centered around a camera placed in the women's second floor bathroom at RCINJ." (TAC ¶ 312.)  Plaintiffs' TAC describes the alleged investigation of Dr. Goydos, including searches of his home and electronic devices, (TAC ¶¶ 36-75), the discovery of a hidden video camera in the women's restroom, (TAC ¶¶ 86), the information allegedly found on Dr. Libutti's computers, (TAC ¶ 92), allegations that Dr. Libutti improperly began investigating Dr. Goydos, (TAC ¶¶ 98-104), Dr. Goydos' conversations surrounding the inaccurate grant application, (TAC ¶ 262), and the alleged improper preservation of Dr. Goydos' work computer, (TAC ¶¶ 289-325).  (*See* Pls.' Opp'n Br., 13-14) (arguing that the TAC has sufficiently plead publication).)

However, the TAC does not allege that any Defendants shared any information with the public as relating to Dr. Goydos.  The TAC does not allege that Defendants published the letter placing Dr. Goydos on administrative leave, nor does it allege that Defendants published any information about Dr. Goydos' status as a possible suspect in any underlying criminal actions.  The TAC does not allege that Defendants in fact shared any information to the public at any time.  Further, while the TAC asserts that Dr. Goydos suffered damage to his reputation, (TAC ¶¶ 367-368, 381), it does not assert that Defendants published or disseminated any information that can

be tied to any reputational injury.  *See Yu v. U.S. Dep't of Veterans Affs.*, 528 F. App'x 181, 185 (3d Cir. 2013) (concluding that plaintiff's "claim fails because he has not produced any evidence that the allegedly false statements were disseminated.").  *See also McCarthy v. Darman*, 372 F. App'x 346, 351 (3d Cir. 2010) (finding publication of official meeting minutes did not constitute a stigma because the plaintiff "was suspended and the . . . [d]efendants were engaged in an on-going investigation.").

In sum, accepting as true the allegations in the Complaint, Plaintiffs' TAC still fails to allege that any negative or false information was actually published by Defendants.  Thus, Plaintiffs' liberty interest claim must fail.

Because Plaintiffs' TAC does not properly plead due process violations, the Fourteenth Amendment claim will be dismissed with prejudice.

> v.        Count Five: Conspiracy to Commit Civil Rights Violations

The Court turns now to the allegations that "the Defendants conspired to deprive Dr. Goydos of his First, Fourth, Fifth, and Fourteenth Amendment rights by creating, orchestrating, pursuing, prompting, directing, and coordinating a bad faith investigation into Dr. Goydos for the misdeeds of Dr. Libutti in an effort to protect Dr. Libutti and silence Dr. Goydos' reports of misappropriation and fraud by destroying his career and forcing his resignation."  (TAC ¶ 379.)

The Court summarized the law on a civil rights conspiracy claim as follows:

> "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018). A plaintiff must establish that the object of the conspiracy was the deprivation of a federally protected right.  *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (citing *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686-87 (3d Cir. 1980)).  Next, the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement

and concerted action." *Id.* To show agreement, the plaintiff must demonstrate that "the state actors named as defendants in the complaint somehow reached an understanding to deny [the plaintiff] his rights." *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993). In the absence of direct proof, a "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). Such circumstantial evidence may include that the alleged conspirators "did or said something . . . to create an understanding," "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy." *BanxCorp v. Bankrate, Inc.*, No. 07-3398, 2011 U.S. Dist. LEXIS 149912, 2011 WL 6934836, at * 10 (D.N.J. Dec. 20, 2011) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010)). The Court is also mindful that "direct evidence of a conspiracy is rarely available." *Capogrosso*, 588 F.3d at 184.

(Mem. Op. 25-26.)

The Court concludes that Plaintiffs' TAC does not cure the deficiencies of the SAC for this purpose. First, to the extent the Court has dismissed the constitutional claims, those cannot serve as the basis for the conspiracy claim. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019). Further, Plaintiffs' TAC broadly alleges that "the Defendants conspired to deprive Dr. Goydos of his First, Fourth, Fifth, and Fourteenth Amendment rights by creating, orchestrating, pursuing, prompting, directing, and coordinating a bad faith investigation" into Dr. Goydos, authorized "warrantless searches and seizures of Dr. Goydos' electronic devices, conducted surreptitious stakeouts of Plaintiffs' home, took adverse employment and criminal action in response to Dr. Goydos' refusal to incriminate himself by appearing for a demanded interview in light of an ongoing criminal investigation, placed Dr. Goydos on administrative leave without a hearing and without being charged with any policy violations, and ultimately threatened Dr. Goydos with detenuring proceedings." (TAC ¶¶ 379-380.) However, these allegations are too conclusory on their face to support a conspiracy claim. The TAC lists the actions Plaintiffs allege are unjust and

wrongful.   The TAC does not sufficiently reference any evidence, aside from unsupported conclusory statements, that demonstrate when an agreement to deprive Plaintiffs of their constitutional right was reached, facts that demonstrate concerted activity occurred, or other circumstantial evidence that would permit this conspiracy claim to survive.   Thus, Plaintiffs' conspiracy claim fails and is dismissed with prejudice.

> b.   *Claims based in New Jersey State Law*

>> i.   <u>Count Six: New Jersey Conscientious Employee Protection Act</u>

Next, Plaintiffs bring a claim under New Jersey's Conscientious Employee Protection Act ("CEPA") alleging Defendants retaliated against Dr. Goydos.  The Court's previous Opinion stated that "Plaintiffs do not allege causation under CEPA sufficient to survive a motion to dismiss" and concluded that "Dr. Goydos' placement on administrative leave and the end of his employment at Rutgers [was] not due to any whistleblowing activity that Dr. Goydos allegedly engaged in when he flagged the discrepancy in the salary figures." (Mem. Op. 27.)  The Court again focuses on the causation element of a CEPA claim and concludes that the TAC also fails to state a claim.

This Court set out the relevant standard for a CEPA claim in its previous Opinion.  In sum:

> CEPA requires that a plaintiff must demonstrate: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J. Stat. Ann. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt,* 828 A.2d 893, 900 (N.J. 2003).  CEPA covers employee complaints about activities the employee reasonably believes are: (1) in violation of a specific statute or regulation; (2) fraudulent or criminal; or (3) incompatible with policies concerning public health, safety or welfare or the protection of the environment. *See Estate of Roach v. TRW, Inc.,*754 A.2d 544, 549 (N.J. 2000).

(Mem. Op. At 27.)

18

Plaintiffs' CEPA claim as laid out in the TAC suffers from the same deficiencies as their SAC, and the Court will dismiss this claim on the same grounds.

Plaintiffs' TAC asserts that Dr. Goydos engaged in his first alleged whistleblowing activity in 2014. (TAC ¶¶ 190-215.)  The TAC also alleges that Plaintiffs' last alleged protected activity took place in or around February 2017.  (TAC ¶¶ 216-219.)  However, the TAC, like the SAC before it, does not sufficiently draw a causal link between Dr. Goydos' alleged protected activity in 2017, and any adverse employment action, such as being placed on administrative leave in March 2018, or the alleged decrease in bonus.  (TAC ¶ 351.)

Thus, for substantially the same reasons as expressed in the Court's previous Opinion, Plaintiffs' CEPA claim will be dismissed.

ii.      Count Seven: Intentional Infliction of Emotional Distress

This Court dismissed Plaintiffs' claim for IIED from the SAC because it determined that Plaintiffs failed to plead conduct that was extreme and outrageous. (*See* Mem. Op. 29.)  The Court explained that Defendants' course of conduct while investigating the camera in the women's bathroom was not unreasonable, let alone extreme or outrageous.  (*Id.*)  The Court also determined that Plaintiffs had failed to plead that Defendants actions were the proximate cause of Dr. Goydos' emotional distress.  (*Id.*)

To state a claim for IIED, a plaintiff must plausibly plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Tarr v. Ciasulli*, 853 A.2d 921, 924 (N.J. 2004) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]" *Buckley*, 544 A.2d at 863 (quoting Restatement § 46 cmt. d), and indeed, to be so

19

outside the bounds of humane discourse that "no reasonable person could be expected to endure it." *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999). "This objective standard ensures that defendants are not held liable when hypersensitive plaintiffs suffer severe emotional trauma from conduct that would not seriously wound most people." *Taylor v. Metzger*, 706 A.2d 685, 697 (N.J. 1998). Additionally, the plaintiff must "show 'that [he or she] suffered from a specific ailment and sought treatment for it." *Conserve v. City of Orange Township*, No. 21-872, 2021 WL 3486906, at *5 (D.N.J. Aug. 9, 2021) (quoting *Phillips v. N.J. Transit*, No. 19-13427, 2021 WL 1661087, at *12 (D.N.J. Apr. 28, 2021)). For instance, "[a] severe and disabling emotional or mental condition which is capable of being generally recognized and diagnosed by professionals trained to do so qualifies as severe emotional distress." *Hill v. N.J. Dep't of Corr. Comm'r Fauver*, 776 A.2d 828, 841-42 (N.J. Super. Ct. App. Div. 2001) (citing *Taylor*, 706 A.2d at 697).

Defendants allege that Plaintiffs' IIED claim in the TAC does not differ materially from its earlier rendition, the SAC, highlighting that Plaintiffs have not been able to successfully allege extreme and outrageous conduct by Defendants, as "[t]his Court has already found that Defendants' investigation into workplace misconduct was justified." (*See* Defs.' Moving Br. 34, ECF No. 87-1.) Additionally, Defendants contend that Plaintiffs have failed to state that "Dr. Goydos experienced any ailments or sought medical assistance[,]" for his distress. (*Id.* at 34.)

Plaintiffs respond that,

> Defendants mercilessly retaliated against Dr. Goydos for almost two years because he reported suspected fraud to Dr. Libutti. The Defendants portrayed Dr. Goydos as a sex offender, violated his privacy, induced law enforcement to violate the sanctity of his home, and ultimately robbed him of his career and life's work. Defendants do not dispute the conduct alleged in the TAC but rather assert that the Court already found that the Defendants' actions were justified. However, whether the Defendants' actions were justified

> is a factual question that is not presently before the Court and must
> be answered through discovery.   Indeed, it is the substance of
> Plaintiffs' well-pleaded claims that controls on a motion to dismiss,
> not Defendants['] potential defenses thereto.

(Pls.' Opp'n 27-28.)  Defendants respond by emphasizing the arguments included in their Motion.

(*See* Defs.' Reply 11-12.)

At this stage, as Plaintiffs emphasize, the Court must weigh all inferences in Plaintiffs' favor, accept all factual allegations as true, and interpret all allegations in the light most favorable to Plaintiffs.  *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).   Plaintiffs have amended the pleading to (substantially) cure the deficiencies identified in the SAC.  Plaintiffs have added allegations which, if accepted as true, would constitute extreme and outrageous conduct (*see* TAC ¶ 413 (alleging intentional destruction of reputation and livelihood as retaliation scheme)), and stated that these actions were the proximate cause of Dr. Goydos' distress (*see id.* ¶ 417 (naked allegation that conduct proximately caused distress)).

Setting aside the implication of collateral estoppel raised by a prior court's factual determination that Defendants' actions were justified, thereby removing the inquiry from the judgment of the trier-of-fact, Plaintiffs' IIED claim must once again be dismissed because Plaintiffs have failed to plead the element of severe emotional distress.  Stripped of conclusory or reductive restatements that Dr. Goydos suffered severe emotional distress, Plaintiffs' allegations include a single, vague allegation that "Defendants intentionally subjected and continue to subject Dr. Goydos to severe duress, strain, anxiety, shame, embarrassment, mental anguish, and pain in their effort to protect Dr. Libutti and silence and discredit Dr. Goydos."  (*See* TAC ¶ 415.)  But this alone is not enough.  In New Jersey, for an IIED claim "to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological

sequelae." *Burgess v. Bennet*, No. 20-7103, 2021 WL 1050313, at *9 (D.N.J. Mar. 19, 2021) (quoting *Aly v. Garcia*, 754 A.2d 1232, 1237 (N.J. Super. Ct. App. Div. 2000)); *see also Love v. N.J. Dep't of Corr.*, No. 15-4404, 2016 WL 2757738, at *12 (D.N.J. May 12, 2016) (dismissing IIED claim for same reason).  The law typically requires more than just an allegation that a person suffered severe emotional distress.  *See Naprstek v. Ditech Fin. LLC*, No. 18-cv-11442, 2022 U.S. Dist. LEXIS 127633, at *21-22 (D.N.J. July 19, 2022) ("Plaintiff has also failed to allege any facts that suggest he suffered severe distress — his sole conclusory allegation that 'distress is certainly severe' and has 'manifested itself both as a physical illness, and a psychological malady as well' is insufficient.").  *See also Birch v. Wal-Mart Stores*, No. 15-1296, 2015 U.S. Dist. LEXIS 165341, at *10 (D.N.J. Dec. 9, 2015) ("While the Complaint uses terms like 'outrageous' and 'severe emotional distress,' these legal conclusions are not supported by facts."); *See also Tassel v. Ocean Cty.*, Civil Action No. 16-4761, 2017 U.S. Dist. LEXIS 190953, at *23-24 (D.N.J. Nov. 17, 2017).

Plaintiffs have not shown that Dr. Goydos plausibly suffered emotional harm so severe that no reasonable person could be expected to bear it, because they have provided no detail whatsoever about the alleged distress.  Plaintiffs' IIED claim, therefore, must once again be dismissed.

iii.    Count Eight: Conversion[1]

---

[1]  In rendering this finding, the Court notes affirmatively that it did not consider the documents extraneous to the TAC discussed by both parties—*i.e.*, the correspondence exchanged between counsel providing additional information and specifications about the alleged missing items. (*See* Defs.' Moving Br. 36-37; *see* Pls.' Opp'n Br. 29-30; *see* Defs.' Reply Br. 12-13 (collectively referencing Email Exchange, Certification of John K. Bennett in Supp. of Defs. Mot. to Dismiss Pls.' TAC (the "Bennett Cert.") Ex. M, ECF No. 87-3).)  These materials would be more appropriately considered on a motion for summary judgment.

In the prior Opinion, the Court dismissed Plaintiffs' conversion claim because Plaintiffs "fail[ed] to allege any facts indicating the Defendants' wrongful interference with his rights," specifically finding that the SAC did not plead that Defendants appropriated Dr. Goydos' property in order to "'exercise' the right of ownership." (*See* Mem. Op. 30 (citing *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1164-65 (N.J. Super. Ct. App. Div. 1988)).)

"[C]onversion is 'the exercise of any act of dominion in denial of another's title to the chattels or inconsistent with such title.'" *Lembaga Enters., Inc., v. Cace Trucking & Warehouse, Inc.*, 727 A.2d 1026, 1029 (N.J. Super. Ct. App. Div. 1999) (quoting *Mueller v. Tech. Devices Corp.*, 84 A.2d 620, 623 (N.J. 1951)). To state a claim for conversion, the plaintiff must show: "(1) the property and right to immediate possession thereof belong to the plaintiff and (2) the wrongful act of interference with that right by the defendant." *Reddy v. Patel*, No. 16-8256, 2017 WL 1709595, at *4 (D.N.J. May 1, 2017) (quoting *Latef v. Cicenia*, No. A-5747-13T2, 2015 WL 10458543, at *5 (N.J. Super. Ct. App. Div. Mar. 14, 2016)).

Plaintiffs add three new purported allegations to their conversion claim, all of which border the line between factual and conclusory. (*See* TAC ¶¶ 425-27.) Plaintiffs claim that the Rutgers Defendants have assumed physical control of certain belongings of Dr. Goydos, including laboratory equipment and other scientific paraphernalia. (*See id.* ¶¶ 424-25.) Plaintiffs infer that the Rutgers Defendants are using Dr. Goydos' belongings "for their own work and purposes" (*see id.* ¶ 426), and further, that despite Plaintiffs' persistent requests to return the property, those in possession refuse to do so (*see id.* ¶ 427). The Court finds that Plaintiffs have sufficiently cured the deficiencies previously identified to permit them to probe the issue further in discovery. Assuming all factual allegations to be true, Plaintiffs have plausibly stated a claim that, in the aftermath of their conflict, Defendants assumed physical control of certain items belonging to Dr.

Goydos, and are now using these items as their own.  Defendants' request to dismiss Plaintiffs'

conversion claim will be denied.

iv.      Count Nine: Breach of Contract

Next, the Court turns to the sufficiency of the common law breach of contract claim in

Plaintiffs' TAC.  The Court dismissed Plaintiffs' breach of contract claim as stated in the TAC

upon determining that Plaintiffs "do not adequately allege that the Rutgers Defendants breached

the alleged contract or that Dr. Goydos sustained damages flowing from that contract."  (Mem.

Op. 31.)  The Court also found that constructive discharge was inadequately pled.  (*See id.* at 31-

32.)

Defendants argue that Plaintiffs' additions do not provide meaningful amendment to the

pleadings, but are instead conclusory allegations.  Specifically, Defendants assert that the TAC

fails to relay how the administration's election to place Dr. Goydos on administrative leave

pending further investigation, and "the mere conveyance of information that Defendants may

potentially initiate detenuring proceedings, subjected Dr. Goydos to working conditions so

intolerable that he was compelled to resign."  (Defs.' Moving Br. 38.)  Moreover, Defendants

contend that Plaintiffs have failed to establish that the policy at issue (*see* Rutgers Policy 60.5.13,

Bennett Cert. Ex. N), in fact constitutes an employment contract (Defs.' Moving Br. 39).

Plaintiffs respond that Dr. Goydos and relevant Rutgers entities were party to an

employment contract for twenty-five (25) years, of which Rutgers Policy 60.5.13 is a part.  (*See*

Pls.' Opp'n Br. 31.)  They add that, even assuming it is not, this is a question of fact to be verified

in discovery, and that they have adequately pled the existence of a contract at this stage.  (*Id.*)

Plaintiffs argue that "Defendants' retaliation, pretext investigation, unexplained suspension, and

announcement of detenure proceedings constitute breaches of that contract."  (*Id.*)  Plaintiffs also

allege that Defendants' conduct caused Dr. Goydos such distress that he was indeed constructively

discharged, *i.e.*, forced to resign, from his position at Rutgers. (*Id.* at 32.)

To state a claim for breach of contract under New Jersey law, the plaintiff must adequately

allege:

> [F]irst, that the parties entered into a contract containing certain
> terms; second, that [the] plaintiffs did what the contract required
> them to do; third, that [the] defendants did not do what the contract
> required them to do, defined as a breach of the contract; and fourth,
> that the defendants' breach, or failure to do what the contract
> required, caused a loss to the plaintiffs.

*Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting Model Jury Charge (Civil),

§ 4.10A "The Contract Claim-Generally" (May 1998)) (internal punctuation marks omitted); *see*

*Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) ("To state a claim for breach of

contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract;

(3) damages flowing therefrom; and (4) that the party stating the claim performed its own

contractual obligations.").

Accepting that Plaintiffs have adequately stated the existence of a contract by alleging that

the policy is incorporated therein, Plaintiffs must still state facts supportive of breach and damages.

Because Plaintiffs concede that Dr. Goydos elected to resign, the harm must arise from the

constructive discharge. "A discharge encompasses not just an actual termination from

employment, but a constructive discharge." *Donelson v. DuPont Chambers Works*, 20 A.3d 384,

392 (N.J. 2011). "A constructive discharge occurs when an employer's conduct 'is so intolerable

that a reasonable person would be forced to resign rather than continue to endure it.'" *Id.* (quoting

*Shepherd v. Hunterdon Dev'tal Ctr.*, 803 A.2d 611, 627 (N.J. 2002)). "For purposes of the laws

against discriminatory or retaliatory discharge, an employee is expected to take all reasonable steps

necessary to remain employed." *Zubrycky v. ASA Apple, Inc.*, 885 A.2d 449, 451 (N.J. Super. Ct. App. Div. 2005) (citing *Shepherd*, 803 A.2d at 627).

But this matter is more easily resolved, because CEPA's waiver provision precludes Plaintiffs' breach of contract claim as a matter of law. A plaintiff may advance a claim for constructive discharge under CEPA or the common law, but not both. Indeed, the article in question provides,

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

CEPA, N.J. Stat. Ann. § 34:19-8. The New Jersey Supreme Court has clarified that,

> the waiver exception means, for purposes of this case, that once a CEPA claim is "instituted," any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law, whether its origin is the Legislature, the courts, the common law or rules of court; or regulations or decisions based on statutory authority, are all waived. The waiver exception contains a list of sources of law that may provide a bundle of rights protecting employees from retaliatory discharge. Parallel claims based on those rights, privileges and remedies are waived because they represent multiple or duplicative claims based on retaliatory discharge.

*Young v. Schering Corp.*, 660 A.2d 1153, 1160 (N.J. 1995); *see Matthews v. N.J. Inst. of Tech.*, 717 F. Supp. 2d 447, 452 (D.N.J. 2010) ("State claims that allege facts substantially related to the CEPA must be dismissed."); *see Estate of Oliva v. New Jersey*, 579 F. Supp. 2d 643, 683-84 (D.N.J. 2008) (summary judgment on LAD claim as precluded by CEPA); *see also Bowen v. Parking Auth. of Camden*, No. 00-5765, 2003 WL 22145814, at *23 (D.N.J. Sept. 18, 2003) (dismissing LAD claim as waived by pursuit of CEPA claim).

Ultimately, the pursuit of the CEPA claim waives the parallel advancement of rights under other laws. Accordingly, Plaintiffs' breach of contract claim will be dismissed with prejudice.

v.       Count Ten: Per Quod

Finally, Plaintiffs allege a *per quod* claim on behalf of Dr. Goydos' wife, Plaintiff Martins. The TAC alleges that "Dr. Martins has sustained the loss or impairment of the comfort, economic support, companionship, consortium, services and duties previously provided by her husband." (TAC ¶ 442.)

First, the Court must note that the viability of Plaintiff Martins's *per quod* claim is subject to the survival of the claims of Dr. Goydos. *Bachman v. United States*, No. 03-4897, 2006 U.S. Dist. LEXIS 94574, 2006 WL 3761985, at *7 (D.N.J. Dec. 19, 2006) ("Per quod claims are 'only maintainable by reason of a spouse's injury.'" (citation omitted)). Further, neither the Third Circuit nor New Jersey state courts have recognized *per quod* claims on Section 1983 claims. *Livingstone v. North Belle Vernon Borough*, 12 F.3d 1205, 1215 n.10 (3d Cir. 1993); *Maudsley v. State*, 816 A.2d 189, 208 (N.J. Super. Ct. App. Div. 2003). *See Pahle v. Colebrookdale Township.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) ("It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights.") Thus, Plaintiffs *per quod* claims as to all remaining Section 1983 claims must fail.

As to Plaintiffs' *per quod* claims for any claims that have survived the motion to dismiss and are based in New Jersey law, namely Plaintiffs' Conversion claim, those claims may go forward. "A per quod, or loss of consortium, claim is a separate cause of action for loss of society, companionship, and services from an injured spouse." *Worster-Sims v. Tropicana Entm't, Inc.*, No. 13-1981, 2016 U.S. Dist. LEXIS 122994, at *21 (D.N.J. Sep. 12, 2016). A Plaintiff who files a *per quod* claim "could recover for the deprivation of her husband's aid, society and conjugal

fellowship." *Landwehr v. Landwehr*, 111 N.J. 491, 501 (1988) (internal citations and quotations omitted). Here, as at least one of the TAC's New Jersey state law claims has survived the motion to dismiss, so too shall Plaintiffs' *per quod* claim, and thus Defendants' motion to dismiss will be denied as to this claim.

## II.   CONCLUSION

For the reasons explained herein, and for other good cause shown, Counts One, Four, Five, Seven, and Nine will be dismissed with prejudice, and the individual defendants will be dismissed from Count Two.

The District Court has provided Plaintiffs with multiple opportunities to amend their Complaint. This Court's previous Opinion essentially provided a roadmap that detailed the deficiencies in Plaintiffs' SAC, and yet Plaintiffs' TAC still failed to cure the vast majority of those deficiencies. In fact, Plaintiffs have been put on notice by this Court that future amended complaints would be required to adhere to the pleading standards, lest it be dismissed with prejudice. (Transcript of Telephone Conference with Judge Martinotti, ECF No. 93, 5:19-23) ("Though I can tell you moving forward, counsel, this dismissal will be with prejudice," and warning Plaintiffs not to file a "baseless" Third Amended Complaint). Accordingly, granting Plaintiffs leave to file yet another amended complaint is clearly futile, and all claims with the exception of Counts Two, Three, Eight, and Ten will be dismissed with prejudice. *Vamsidhar Reddy Vurimindi v. City of Philadelphia*, 521 F. App'x 62, 66 (3d Cir. 2013) ("Accordingly, granting [the plaintiff] leave to file yet another amended complaint would have been futile, and the District Court did not abuse its discretion by dismissing the third amended complaint with prejudice.").

An appropriate Order follows.

Date: <u>February 28, 2023</u>                          <u>*/s/ Georgette Castner*</u>
                                                 GEORGETTE CASTNER, U.S.D.J.