NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES S. GOYDOS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RUTGERS, THE STATE UNIVERSITY, et al., <br><br> Defendants. | Civil Action No. 19-08966 (GC) (DEA) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court upon Plaintiffs James Goydos and Maria E. Martins's motion to dismiss Defendant Rutgers, the State University's (Rutgers) counterclaims, under Federal Rule of Civil Procedure (Rule) 12(b)(6), and for leave to amend the operative complaint. (ECF Nos. 112, 121.) Rutgers opposed, and Plaintiffs replied. (ECF Nos. 124, 125.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

**I.     BACKGROUND**

For a detailed recitation of the factual background and amendments to the complaints, see the Court's prior opinions at ECF Nos. 76 and 102.

Rutgers asserts seven counterclaims: breach of the duty of loyalty to Rutgers (First Counterclaim); fees and costs spent defending against Plaintiffs' unsuccessful claim under the New Jersey Conscientious Employee Protection Act (NJCEPA), N.J. Stat. Ann. §§ 34:19-1, *et seq.*

(Second Counterclaim); malicious abuse of legal process (Third Counterclaim); malicious prosecution (Fourth Counterclaim); trespass to property (Fifth Counterclaim); violation of the New Jersey Computer Related Offenses Act (CROA), N.J. Stat. Ann. § 2A:38A-3 (Sixth Counterclaim); and violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §§ 1030, *et seq.* (Seventh Counterclaim). (Countercl., ECF No. 112 at 39-44.[1])  Plaintiffs move to dismiss all counterclaims.

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

---

[1]     Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

### III.     DISCUSSION

For nearly all counterclaims, Plaintiffs argue that Rutgers merely recites legal elements without pleading facts to state a claim.

#### A.     Breach of the Duty of Loyalty (First Counterclaim)

Plaintiffs argue that Rutgers has not pled enough facts to state a claim for breach of the duty of loyalty.

To state a claim for breach of the duty of loyalty under New Jersey law, a plaintiff must allege (1) the existence of an employer-employee relationship, (2) breach of the duty of loyalty, and (3) resulting harm to the plaintiff. *See Cameco, Inc. v. Gedicke*, 724 A.2d 783, 788-90 (N.J. 1999) (explaining that an employer must show that an employee breached the duty of loyalty and that the employee's breach proximately caused the requested damages). "An employee may breach the duty of loyalty by actions that do not rise to the level of direct competition. Merely acting contrary to the employer's interests constitutes a breach of the duty of loyalty." *Vibra-Tech Engineers, Inc. v. Kavalek*, 849 F. Supp. 2d 462, 489 (D.N.J. 2012) (citing *Cameco, Inc.*, 724 A.2d at 789). "For example, employees can breach the duty of loyalty by engaging in self-dealing or by taking or using legally protected information to benefit himself." *Id.* (D.N.J. 2012) (citing *Cameco, Inc.*, 724 A.2d at 789; *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1169 (N.J. 2001)).

Plaintiffs first assert that Rutgers "baldly parrots the elements of a breach of loyalty claim, using such conclusory language as 'egregious misconduct and serious criminal activities,' 'self-dealing,' 'high degree of responsibility,' and 'acts of disloyalty.'" (ECF No. 121-1 (quoting Countercl. ¶¶ 3-4, 8).) The Court agrees.

3

Though a pleading does not need "detailed factual allegations, . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, the First Counterclaim recites the prima facie case for breach of the duty of loyalty, with no description of the nature of Dr. Goydos's position, the level and nature of loyalty owed, or the alleged misconduct, criminal activity, and self-dealing that underly the claim. Instead, Rutgers asserts generic and conclusory statements such as "Goydos owed a duty of loyalty to Rutgers as his employer" and "[b]y the egregious misconduct and serious criminal activities, including self-dealing, Goydos breached his duty of loyalty to Rutgers as his employer." (Countercl. ¶¶ 2-3.)

In opposition, Rutgers points to facts that are not in its counterclaims. For instance, Rutgers argues that Plaintiffs ignore "the factual allegations pled in this counterclaim"—that "Dr. Goydos occupied positions of trust and confidence as a result of his employment and position with Rutgers as a Professor of Surgery and Director and Section Chief of Melanoma and Soft Tissue Oncology Program at Rutgers Robert Wood Johnson Medical School." (ECF No. 124 at 15 (citing Countercl. ¶ 1).) Yet paragraph one of the First Counterclaim states only that "Goydos occupied positions of trust and confident in his employment with Rutgers." (Countercl. ¶ 1.) Rutgers also says it "specifically alleges" that the actionable conduct was Dr. Goydos's "burglary, two offenses of computer theft, impersonation, official misconduct, and possession of an assault rifle," as well as "using his positions with Rutgers to gain access [to] Rutgers buildings, facilities, and computers to unlawfully obtain information to be used for his own personal benefit." (ECF No. 124 at 15.) The Counterclaims, however, include none of those facts.

Rutgers cannot use its brief to amend or supplement its counterclaims. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). For that reason, the Court dismisses the First Counterclaim without prejudice. If Rutgers moves for leave to amend its counterclaims, Rutgers must add facts describing the employer-employee relationship, Dr. Goydos's breach of the duty of loyalty, and the resulting harm to Rutgers. *Cameco, Inc.*, 724 A.2d at 790 ("Generally, to recover money damages, the employer must establish that the employee's breach proximately caused the requested damages."); *but see Kaye v. Rosefielde*, 121 A.3d 862, 873 (N.J. 2015) ("[A]n employer may seek disgorgement of a disloyal employee's compensation as a remedy for the breach of the duty of loyalty, with or without a finding of economic loss.").

  **B.**  **Fees and Costs Under NJCEPA (Second Counterclaim)**

Plaintiffs next move to dismiss Rutgers's counterclaim for the fees and costs it incurred in defending against Plaintiffs' NJCEPA claim that the Court dismissed at the pleadings stage. (ECF No. 121-1 at 10-13.)

NJCEPA provides in part the following:

> A court, upon notice of motion in accordance with the Rules Governing the Courts of the State of New Jersey, may also order that reasonable attorneys' fees and court costs be awarded to an employer if the court determines that an action brought by an employee under this act was without basis in law or in fact.

[N.J. Stat. Ann. § 34:19-6.]

"CEPA permits an award of 'reasonable attorneys' fees and court costs' to a prevailing employer 'if the court determines that an action brought by an employee under this act was without basis in law or in fact.'" *Noren v. Heartland Payment Sys., Inc.*, 154 A.3d 178, 185 (N.J. Super.

5

Ct. App. Div. 2017) (quoting N.J. Stat. Ann. § 34:19-6).  This provision applies only to "a narrow band of cases" in which "the employer must be vindicated *and* the employee must have proceeded without basis in law or in fact."  *Id.* (quoting *Best v. C&M Door Controls, Inc.*, 981 A.2d 1267, 1273 (N.J. 2009)).

In dismissing Plaintiffs' NJCEPA claim (Count Six) of the Second Amended Complaint, the Court found that "Plaintiffs d[id] not allege causation under CEPA sufficient to survive a motion to dismiss," largely because "Plaintiffs allege[d] no facts indicating temporal proximity or any other circumstantial facts suggesting a causal link indicating that the decrease in bonus was retaliation for Dr. Goydos's whistleblowing activity."  (ECF No. 76 at 27-28.)  Plaintiffs then filed the Third Amended Complaint, without meaningfully amending the NJCEPA claim.  (*Compare* ECF No. 82 ¶¶ 386-410, *with* ECF No. 69 ¶¶ 329-350.)  And so, the Court dismissed the NJCEPA claim of the Third Amended Complaint for the same reason: "the TAC, like the SAC before it, does not sufficiently draw a causal link between Dr. Goydos's alleged protected activity in 2017, and any adverse employment action."  (ECF No. 102 at 19.)

The fee-shifting provision states that an award of reasonable attorneys' fees and costs may be ordered "upon notice of motion."  N.J. Stat. Ann. § 34:19-6.  Instead of so moving, Rutgers asserts a counterclaim for this relief.  Though it is unclear whether NJCEPA's fee-shifting provision creates a cause of action, Plaintiffs have not contested Rutgers's use of a counterclaim as the form to seek relief—so the Court need not address it.  The Court finds, however, that a ruling on the merits of Rutgers's counterclaim would be premature at the pleadings stage.  According to the caselaw cited by the parties, courts typically consider whether a fee-shifting award under CEPA is proper at the end of the case, not where, as here, the case is still being actively litigated.  *See, e.g.*, *Noren*, 154 A.3d at 181 (reviewing the trial court's post-trial award of fees and costs);

*Buccinna v. Micheletti*, 710 A.2d 1019, 1020 (N.J. Super. Ct. App. Div. 1998) (reviewing post-trial motion for costs and fees under CEPA); *Marrin v. Cap. Health Sys., Inc.*, Civ. No. 14-2558, 2017 WL 3086370, at *7 (D.N.J. July 20, 2017) (awarding attorneys' fees and costs after the plaintiff abandoned her CEPA claim at the summary-judgment stage).

Plaintiffs' motion to dismiss the Second Counterclaim is therefore denied.

### C.  Malicious Abuse of Legal Process & Malicious Prosecution (Third & Fourth Counterclaims)

Plaintiffs argue that Rutgers, as with its duty of loyalty counterclaim, has not pled enough facts to state claims for malicious abuse of legal process and malicious prosecution. (ECF No. 121-1 at 13-16.) The Court agrees.

"Common law malicious abuse of process claims seek to hold a defendant liable for 'the improper, unwarranted, and perverted use of process *after* it has been issued.'" *Cluver v. Borough of Sayreville*, Civ. No. 10-3173, 2013 WL 394030, at *8 (D.N.J. Jan. 30, 2013), *aff'd*, 557 F. App'x 180 (3d Cir. 2014) (quoting *Ash v. Cohn*, 119 N.J.L. 54, 58, 194 A. 174, 176 (1937)). For "malicious abuse of process," the elements are that (1) "defendants made an improper, illegal, and perverted use of the process, i.e., a use neither warranted nor authorized by the process; and" (2) "in use of such a process there existed an ulterior motive." *Ash*, 194 A. at 176; *see* N.J. Model (Civil) Jury Charge 3.30D (Abuse of Process). "Proof of the existence of the ulterior motive may be inferred from the improper act, but if the act be a proper one, the motive is immaterial." *Ash*, 194 A. at 176. "The legal pursuit of one's right, no matter what may be the motive of the promoter of the action, cannot be deemed either illegal or inequitable." *Id.*

Rutgers's allegations for this counterclaim are merely recitations of the legal standards. For example, Rutgers alleges that "Goydos' acts in initiating and pursuing legal process against Rutgers demonstrate a purpose ulterior to the purposes for which such legal process is intended";

7

"Goydos' ulterior purpose is to coerce and oppress Rutgers through his intentional malicious abuse of the legal process, without probable cause"; and "[t]herefore, Goydos is liable to Rutgers for economic, compensatory and punitive damages for his malicious abuse of legal process, together with the payment of Rutgers' attorneys' fees and costs incurred in defending against this action, and such other relief as the Court deems to be just and proper." (Countercl. ¶¶ 13-15.)

The same is true for Rutgers's counterclaim for malicious prosecution.

For "malicious prosecution of a civil suit," the elements are that (1) "the suit was brought without reasonable or probable cause," (2) "it was actuated by malice," (3) "it has terminated favorably to the plaintiff in the malicious prosecution action," and (4) "the plaintiff has suffered a special grievance caused by the institution of the underlying civil claim." *Mayflower Indus. v. Thor Corp.*, 83 A.2d 246, 252 (N.J. Super. Ct. Ch. Div. 1951), *aff'd*, 89 A.2d 242 (N.J. 1952); *LoBiondo v. Schwartz*, 970 A.2d 1007, 1023 (N.J. 2009); *see also* N.J. Model (Civil) Jury Charge 3.13 (Malicious Prosecution Based Upon A Prior Civil Proceeding).

Rutgers again merely recites the legal standard—that "Goydos has maliciously brought this action against Rutgers without probable cause supported by facts and circumstances sufficient to warrant a reasonable person to believe that Rutgers acted as alleged in Plaintiffs' Complaint"; "Goydos' malicious prosecution has caused Rutgers to suffer actual and special damages, for which Goydos is liable"; and "[t]herefore, Goydos is liable to Rutgers for economic, compensatory and punitive damages for his malicious prosecution, together with the payment of Rutgers' attorneys' fees and costs incurred in defending against this action, and such other relief as the Court deems to be just and proper." (Countercl. ¶ 17-19.)

Rutgers counters that it has "specifically alleged" facts supporting its abuse of process and malicious prosecution claims, asserting that "[t]his is explained in-depth, for example, as it relates

8

to Dr. Goydos's continued pursuit of a CEPA claim despite knowing that it was without basis in law or fact." (ECF No. 124 at 21.) But as with its CEPA counterclaim, Rutgers cannot use its brief to supplement its counterclaims for malicious abuse of legal process and malicious prosecution. *Zimmerman*, 836 F.2d at 181.

Nor has Rutgers alleged that it suffered a special grievance. "A special grievance 'consists of an interference with one's liberty or property and includes events such as the filing of a bankruptcy petition, granting an injunction, filing a lis pendens[,] or wrongful interference with the possession or enjoyment of property.' Mere inconveniences and costs of defense do not give rise to a special grievance." *Repack v. Akimova*, 2023 WL 3312355, at *3 (N.J. Super. Ct. App. Div. May 9, 2023) (quoting *Klesh v. Coddington*, 684 A.2d 530, 535 (N.J. Super. Ct. Law. Div.), *aff'd and remanded*, 684 A.2d 504 (N.J. Super. Ct. App. Div. 1996)); *see Klesh*, 684 A.2d at 536 (stating that counsel fees, mental anguish, emotional distress, and alleged loss of reputation "flowing from the mere filing of any complaint" are not special grievances); *Baglini v. Lauletta*, 768 A.2d 825, 835 (N.J. Super. Ct. App. Div. 2001) ("If plaintiffs' only damages consist of costs of defending the original suit, then the special grievance requirement is not met."); *Garcia v. Lilleston*, 2015 WL 2458018, at *4 (N.J. Super. Ct. App. Div. May 28, 2015) ("Litigation expenses, 'mental anguish, emotional distress, or loss of reputation' do not constitute 'special injuries.'" (quoting *Turner v. Wong*, 832 A.2d 340, 350 (N.J. Super. Ct. App. Div. 2003))).

Therefore, the Court dismisses the Third and Fourth Counterclaims without prejudice.

**D.     Trespass to Property (Fifth Counterclaim)**

Plaintiffs argue that Rutgers pleads no factual allegations in support of its counterclaim for trespass. (ECF No. 121-1 at 17.)

"[A] cognizable claim for trespass occurs 'when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it.'" *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009) (quoting *Luse v. Jones*, 39 N.J.L. 707, 709 (1877)).

Rutgers alleges in conclusory fashion that "[b]y his actions, including but not limited to those criminal actions to which he has pled guilty, Goydos has engaged in actionable trespass to property belonging to Rutgers"; and "[t]herefore, as a result of Goydos' acts of trespass, Rutgers has been injured, for which Rutgers is entitled to damages for the value of its property, punitive damages, an award of its reasonable attorneys' fees and costs, and such other relief as the Court deems to be just and proper." (Countercl. ¶¶ 21-22.)

Rutgers again counters by describing the details underlying its counterclaim—details that are not in the Counterclaims. (*See* ECF No. 124 at 22-23.) Rutgers lists charges that Dr. Goydos pled guilty to, adding: "By pleading guilty to these crimes, Dr. Goydos admitted that he entered into and took property of Rutgers in an inappropriate and unauthorized manner and without approval, thereby establishing the required elements of a claim for trespass. (*Id.* (citing Bennett Cert. Ex. B, Transcript of Dr. Goydos's 12/19/19 Plea Hearing).)

Rutgers's argument that "[t]he Court has discretion to consider documents that are referenced in the pleading or on which these counterclaims are based" is misplaced. For starters, the Counterclaims do not reference any public records from the criminal case. And though the Court may consider documents incorporated into the complaint by reference, *see Winer Fam. Tr. v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007), Rutgers's Counterclaim does not cite or incorporate by reference any documents related to Goydos's criminal case.

Thus, the Court dismisses the Fifth Counterclaim without prejudice.

### E. NJCROA & CFAA (Sixth & Seventh Counterclaims)

Plaintiffs argue that Rutgers, as with its duty of loyalty, CEPA, malicious abuse of legal process, malicious prosecution, and trespass counterclaims, has not pled enough facts to state claims under CROA or CFAA. (ECF No. 121-1 at 18.)

"To state a claim under the CROA, the Complaint 'requires the following two elements: (1) an actor must take or damage computer data without authorization, and (2) the Plaintiff must have been 'damaged in business or property' as a result of the prohibited conduct.'" *Ho-Ho-Kus, Inc. v. Sucharski*, Civ. No. 23-01677, 2023 WL 7403539, at *15 (D.N.J. Nov. 9, 2023) (quoting *Lard-VID, LLC v. Ground Support Labs, LLC*, 2021 WL 2396576, at *6 (N.J. Super. Ct. Law Div. Feb. 26, 2021) (noting that CROA "is sometimes referred to as New Jersey's anti-hacking statute")); *see* N.J. Stat. Ann. § 2A:38A-3 ("A person or enterprise damaged in business or property as a result of any of the following actions may sue [for] . . . [t]he purposeful or knowing, and unauthorized altering, damaging, taking, or destruction of any data . . . .").

Rutgers's allegations are merely legal recitations of a CROA claim—that "[b]y his actions, Goydos has purposefully and/or knowingly engaged in the unauthorized access to a computer, computer system and/or computer data belonging to Rutgers, in violation of the New Jersey Computer Related Offenses Act, N.J.S.A. 2A:38A-3"; and "[a]s a result of Goydos' actions, Rutgers has experienced a loss, deletion, removal and/or destruction of data, programs and systems, resulting in actionable damages to Rutgers." (Countercl. ¶¶ 24-25.)

Rutgers also seeks "the costs of its investigation and forensic research into such loss." (*Id.* ¶ 26.) "New Jersey law is clear," however, "that 'costs of investigation' do not qualify as damages under the CROA." *Ho-Ho-Kus*, 2023 WL 7403539, at *15 (citing *Spencer Sav. Bank SLA v. McGrover*, 2015 WL 966151, at *7 (N.J. Super. Ct. App. Div. Mar. 5, 2015)).

11

Courts have interpreted CROA "in harmony with its federal counterpart," the CFAA, a computer crime statute that also proscribes unauthorized use. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). "A claim under the Computer Fraud and Abuse Act ('CFAA') § 1030(a)(4) has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud;' and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *PNY Techs., Inc. v. Salhi*, Civ. No. 12-04916, 2013 WL 4039030, at *6 (D.N.J. Aug. 5, 2013) (quoting 18 U.S.C. § 1030(a)(4)).

As with its CROA claim, Rutgers merely recites the elements of a CFAA claim—"[b]y his actions, Goydos has purposefully and knowingly engaged in the unauthorized access to Rutgers' computers, computer systems, computer software and/or computer data, and the removal of information, documents and/or data contained on those computers, in violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4)"; and "[b]y his actions, Goydos knowingly and intentionally caused damages without authorization to a protected computer, in violation of 18 U.S.C. §§ 1030(a)(4) and (a)(5)(B)(i), in an amount greater than $5,000.00." (Countercl. ¶¶ 29-30.)

Rutgers again counters with facts that are not in its counterclaims—that "Dr. Goydos has admitted as part of his guilty plea to improperly hacking and accessing Rutgers computers and taking personal information and credentials of victims and other computer-related data, without authorization and without the knowledge of the person owning the computers." (ECF No. 124 at 24, 26.) Rutgers contends that it "has expressly alleged that Dr. Goydos' actions – which include those actions admitted to in his guilty plea – resulted in damages greater than $5,000." (*Id.* at 26.)

The Court disagrees. Rutgers's CROA and CFAA counterclaims do not allege enough facts to state a claim.

Plaintiffs also argue that Rutgers's CFAA counterclaim is barred by the Act's two-year statute of limitations, as Dr. Goydos last accessed Rutgers's property in 2018, yet Rutgers asserted its CFAA counterclaim in June 2023.[2] (ECF No. 121-1 at 21.) In opposition, Rutgers says its CFAA counterclaim is a compulsory counterclaim under Rule 13(a) and thus relates back to the time that Plaintiffs filed suit on March 27, 2019. (ECF No. 124 at 26-27.)

Under Rule 8(c), the statute of limitations is an affirmative defense. The limitations defense may nevertheless be raised on a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Aleynikov v. The Goldman Sachs Grp., Inc.*, Civ. No. 12-5994, 2016 WL 6440122, at *5 (D.N.J. Oct. 28, 2016) (quoting *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978); citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel*, 570 F.2d at 1174.

As to relation back,[3] courts in this Circuit have adopted the "majority view" that "the institution of a plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1419 (3d ed.).[4] Thus,

---

[2] Subsection (g) of the CFAA, the section providing a civil cause of action, states that "[n]o action may be brought . . . unless such action is begun within 2 years of the date of the act complained of or the date of discovery of the damage." 18 U.S.C. § 1030(g).

[3] Relation back is a question of federal law. *Aleynikov*, 2016 WL 6440122, at *6 n.5 (citing *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 n.5 (3d Cir. 1995) ("[T]he question of relation back is procedural and therefore properly analyzed according to federal practice.")).

[4] *See, e.g.*, *Logic Tech. Dev. LLC v. Levy*, Civ. No. 17-4630, 2019 WL 6875337, at *2 n.4 (D.N.J. Dec. 17, 2019) ("The better view holds that 'the institution of plaintiff's suit tolls or

the Court must determine (1) the date that the counterclaims are deemed "filed" in this Court, and (2) whether Rutgers brought its CFAA counterclaim within the two-year limitations period.

A compulsory counterclaim is a claim that (1) "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and (2) "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1).

Rutgers argues that Plaintiffs' complaint and Rutgers's counterclaims both "relate to the conduct of Dr. Goydos during his employment with Rutgers." (ECF No. 124 at 27.) This reasoning is too vague for the Court to rule that the CFAA counterclaim is an "offshoot[] of the same basic controversy between the parties." *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 389-90 (3d Cir. 2002) ("For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim. . . . [T]he objective of Rule 13(a) is to promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose."). The Court therefore cannot find that the CFAA counterclaim is compulsory.

Rutgers also argues, without citing any authority, that "each time Dr. Goydos engages in misconduct that could harm Rutgers' reputation and/or recruitment, additional damage is caused as a result of Dr. Goydos' violation of the CFAA, and the statute of limitations is reset." (ECF No. 124 at 28.) The Court rejects Rutgers's theory for two reasons.

---

suspends the running of the statute of limitations governing a compulsory counterclaim.'" (quoting *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982))); *Aleynikov*, 2016 WL 6440122, at *6 (D.N.J. Oct. 28, 2016) ("I agree that the relation-back doctrine can apply to compulsory counterclaims."); *Giordano v. Claudio*, 714 F. Supp. 2d 508, 522-23 (E.D. Pa. 2010) ("Although Rule 13 does not provide for relation back, the majority view is that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." (citations and internal quotation marks omitted)).

First, by the statute's own language, Rutgers cannot recover under the CFAA for harm to its reputation or future recruitment. *See* 18 U.S.C. § 1030(e)(8) (defining "damage" as "any impairment to the integrity or availability of data, a program, a system, or information"); 18 U.S.C. § 1030(e)(11) (defining "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."); *see also Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) ("The [CFAA] definitions of 'damage' and 'loss' thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data."); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 330 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020) ("The CFAA's definition of loss includes lost revenue incurred because of an interruption of service but does not include claims for lost business opportunities, damaged reputation, and other missed revenue opportunities." (citing 18 U.S.C. § 1030(e)(11)) (collecting cases)).

Second, Rutgers's continuing-violations theory is unfounded. *See* 18 U.S.C. § 1030(g) (providing that claims accrue no later than "the date of the discovery of the damage"); *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."); *Sewell v. Bernardin*, 795 F.3d 337, 240 (2d Cir. 2015) (holding that CFAA claims accrued, for limitations purposes, when the plaintiff first discovered the "damage" to her email account—that she could not access her account—regardless of whether she knew "exactly what happened or why she could not log in"); *Verschleiser v. Frydman*, 2023 WL 5835031, at *10

(S.D.N.Y. Sept. 7, 2023) (rejecting "vague and conclusory assertions" that ongoing or recently occurred misconduct "reset the clock on the applicable statutes of limitations").

Still, the limitations bar is not apparent on the face of Rutgers's counterclaims, largely because the CFAA counterclaim includes no facts to state a substantive claim for relief. Indeed, the Counterclaims do not state when the "act complained of" or the "discovery of the damage" occurred. 18 U.S.C. § 1030(g). Therefore, the Court will refrain from ruling on the timeliness of Rutgers's CFAA counterclaim and instead dismiss the counterclaim because it fails to state a claim. *See Aleynikov*, 2016 WL 6440122, at *11 (finding while analyzing statute of limitations that the claim's lack of specificity required dismissal for failure to state a claim).

### F. Plaintiff's Motion for Leave to Amend

Plaintiffs also seek leave to add a claim for defense or indemnity against Rutgers's counterclaims. (ECF No. 121-1 at 22.) But as Rutgers points out, Plaintiffs did not include a proposed amended complaint with their motion papers as required by Local Civil Rule 15.1(a)(1). (ECF No. 124 at 31.)

Local Civil Rule 15.1 "is not simply a nicety that can be disregarded by parties at a whim"—"[i]t serves an important purpose." *K.K-M v. New Jersey Dep't of Educ.*, Civ. No. 17-11579, 2020 WL 6817506, at *6 (D.N.J. Nov. 20, 2020) (citing *A.B. v. Vineland Bd. of Educ.*, Civ. No. 17-11509, 2019 WL 2354609, at *5 (D.N.J. June 4, 2019)); *see Robinson v. Section 23 Propoerty Owner's Ass'n, Inc.*, Civ. No. 18-9658, 2018 WL 11208895, at *1 (D.N.J. Oct. 24, 2018) (noting that "one of the 'cardinal rules' for a party seeking leave to amend a pleading is that a copy of the proposed amended pleading be attached to the motion" (citing *U.F.C.W. Loc. 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 150 (D.N.J. 2007))).

Even so, Plaintiffs cite no caselaw or other authority in support of their request to add a claim for defense and indemnity. In consequence, the Court cannot assess whether the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that courts must "freely give[]" leave to amend absent undue delay, bad faith, or futility of the amendment). The Court therefore denies Plaintiffs' motion for leave to amend, without prejudice to Plaintiffs' refiling their motion in accordance with our federal and local rules and judicial preferences.

### IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiffs' motion to dismiss Rutgers's counterclaims is **GRANTED** in part and **DENIED** in part, and Plaintiffs' motion for leave to amend is **DENIED** without prejudice. All of Rutgers's counterclaims, except for the Second Counterclaim, are **DISMISSED** without prejudice. Rutgers shall have 21 days to amend its counterclaims to the extent that Rutgers can cure the deficiencies identified in this Memorandum Opinion. An appropriate Order follows.

Dated: March 28, 2024

                                                                                    *Georgette Castner*
                                                                                    **GEORGETTE CASTNER**
                                                                                    **UNITED STATES DISTRICT JUDGE**